Case 25-1241, Koffi Duffi v. Pamela Bondi Good morning, Your Honors, and may it please the Court, Samir Ahmed, on behalf of the petitioner Koffi Duffi. I would like to introduce law student Karen Murphy, who will be presenting oral argument in this case. Thank you. Good morning, Your Honors. Thank you, and may it please the Court. My name is Karen Murphy, and I represent Koffi Duffi. I'd like to reserve three minutes for rebuttal. Okay, now our rule is you'll have to pay attention to your time and make sure you leave sufficient time for your rebuttal. Thank you, Your Honor. Mr. Duffi asked the Court grant the petition for three independent reasons. First, Lofa Bright instructs this Court to interpret a statute according to its best meaning. The statute at issue here, the Immigration and Nationality Act, bars asylum and withholding of removal when the Attorney General determines that an alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the country. But that's incompatible with the text and structure of the bar in addition to this Court's precedence, which counsel that a statute should be read to give effect to every word and preclude a reading that would render an entire statutory phrase superfluous. Counsel, I wanted to ask that phrase. Nobody briefed this, but I think it's an important question because it happens all the time in the immigration context, which is the categorical approach. With particularly serious crime, I'm just wondering whether we look at that in terms of the conviction itself, the nature of the crime, or we look at it in terms of specific facts that were presented in that crime, like we look at the charging documents and all of that. So is it categorical or not, to the extent you're familiar with it? No, Your Honor. We don't think that the best reading of the statute is the categorical approach here. I think there's a few clues. One is crime, one is conviction, and one is danger. And I think it involves a more holistic approach that would address the facts and circumstances as opposed to the mere elements of the crime. The best reading of the PSC bar is that it requires both an especially demanding threshold serious inquiry in addition to a future dangerousness inquiry. Second, even if the court upholds the BIA's reading of the PSC bar, it should still remand because the board abuses discretion in finding Mr. Duffy's misdemeanor burglary conviction, the 360-day sentence, all but time for Mr. Duffy's mental health in minimal sentence, it improperly found facts, and improperly found that Mr. Duffy's misdemeanor burglary conviction was more than just a simple property crime. Third, the court should remand because the BIA found Mr. Duffy ineligible for a deferral of removal under the Convention Against Torture, erring by improperly excluding expert evidence that the government officials would acquiesce to torture. If the court agrees with Mr. Duffy on any of these three issues, the proper remedy is a remand. Loeb or Bright affected a sea change in how this court and other federal courts interpret ambiguous statutes. Whereas previously there was a thumb on the scale for the government's reasonable interpretation, for an agency's reasonable interpretation of an ambiguous statute, now the court must conduct its own independent reasoning using the traditional tools of statutory interpretation. Here, the text requires both a threshold seriousness inquiry and a separate future dangerousness inquiry. And we know this because this court's precedents hold, as Judge Strauss said in Quido La Chicholca, that when you have a statute, you can't read it so that entire statutory clauses or words are to be rendered superfluous. And so we have to read that phrase constitutes a danger to have its own independent meaning. This is bolstered by the fact that it's set off by commas separated from alien in addition to constitutes a danger. And that the focus of the statute itself is not on the crime, it's on the alien. And so it's not the Attorney General determines that a crime is particularly serious. The Attorney General determines that an alien, having been convicted of a particularly serious crime, constitutes a danger. You know, the government argues that if it's particularly serious, then the alien is automatically dangerous. And so they read the two clauses together, not so much in a superfluous way, but in a way that those two things go together. And I'm just wondering what your response is to the government, sort of, they go together. So I have a few points on that, Your Honor. First, I suppose I would disagree with the fact that it's not superfluous to the extent that if constitutes a danger wasn't there, we would read the statute exactly the same way. We'd read the same way as if it said the Attorney General determines there's a PSC. And I think this is also clear in terms of the statutory structure. Whereas we're in 1158 B2A2, the other bars to asylum, for example, the persecution bar in B2A1 only require persecution. There's none of this constitutes a danger language. And in B2A3, the serious non-political crime bar, all that's required is a finding that the alien committed a serious non-political crime. Again, there's none of this constitutes a danger language. And to the extent this court finds the statute to be ambiguous, and we recognize that previous holdings of this court, including Muamad, do find the statute to be ambiguous. Rather than defer to the government, as we did under Chevron, we should do what Justice Stevens said to do in Cardozo-Fonseca, which is construe all of the lingering ambiguities in favor of the non-citizen who faces the harsh measure of deportation. How does that look, though? I assume that the immigration judge would make both findings, that the reading of this, because it's delegation of authority from the Attorney General to immigration judges, that what you would want is the immigration judge to say, as a matter of law, this is or is not a specific dangerousness finding. Is that sort of what you have in mind in terms of how this would work? Yes. I suppose that's, yes. Yes, Your Honor. I suppose this court would be deciding the questions of law, including the meaning of seriousness, the meaning of danger. But in terms of applying the facts to the law, certainly the IJ would be doing that in the first instance. And I suppose there would have to be a threshold ruling that, as a matter of law, the crime is particularly serious, and that then there's a dangerousness finding. So yes, Your Honor. What about the idea that, perhaps using the word having been convicted, that the constitutes of danger is really part of the analysis of whether it's a particularly serious crime to begin with? So the dangerousness modifies the crime. It's just part of whether or not it's a particularly serious crime, not necessarily a separate second step. Now we determine whether this particular person, looking at all sorts of other factors, becomes a danger. So, Your Honor, I think that's a plausible reading of the statute. It's not the reading of the statute that the board applied here. And so a remand would be warranted if the court find that the best reading. But I also don't think it's the best reading. And the reason for that is because the run of the sentence is that the alien constitutes a danger. Alien is the subject of the clause. Constitutes is the verb. And so danger connects alien and constitutes. And I understand that response, and that makes sense. I don't have an answer, but I'm trying to figure out what this having been convicted of, it seems to be sort of an unusual phrase that, to me, kind of made me think whether it was incorporated. But you make a good point. So in terms of it being an unusual phrase, Your Honor, I think two responses to that. One, the fact that there's this sort of past participial phrase in addition to this present verb that has sort of a future-oriented look, I think cuts in our favor that we need two separate inquiries here, a past-looking inquiry and a future inquiry. And the reason it might be a sort of strange phrase is that it's transplanted exactly from Article 33.2 of the 1951 Refugee Convention. And when we read statutes that come directly from another source, they bring that soil with them. And so we would ask the court to read the statute the way that UNHCR does and to look to the handbook as Justice Stevens did in Cardozo-Fonseca. I think this is also just a presumption we've had since the days of Chief Justice Marshall that we shouldn't read Congress's statutes to violate international law absent a clear statement. So I wanted to ask about this. So if you're right, on the dangerousness, and I think back to some of the other areas where dangerousness plays a role, the drug user in possession, at least in this circuit, the 922G3, I think. Well, anyways, it potentially brings in other acts, right? So it wouldn't just be the particularly serious crime. That would be relevant. But suppose there's like eight petty crimes or this person's a recidivist. Do you agree that that could be brought in? I mean, if you're looking at the danger, you're talking about the whole person and their entire history. Yes, Your Honor, our argument is that danger modifies alien. And so certainly we'd have to have a holistic inquiry about the particular non-citizen. So then the question is, if you're right about this, why doesn't he fall into that? Because he's got a pretty extensive criminal record. Now there's a lot of, my understanding is there's a lot of crimes. You may argue that they're not serious, but we can certainly take into account recidivism and the fact that he seems to be a serial criminal. So what's your response to that? Yes, so a few responses to that, Your Honor. One is that these are the sorts of factual determinations that should be made by the IJ in the first instance. Because there was no dangerousness inquiry under the law of the circuit, we weren't allowed to submit evidence with regard to dangerousness because it would have been irrelevant under the old reading of the statute. And I'd also just like to call the court's attention to the fact that we won in the immigration court. And the immigration judge didn't even find Mr. Duffy's crime to be particularly serious, let alone that he's a future danger. He's undergone treatment for his substance abuse. And we're very confident that below we'll both be able to prove that Mr. Duffy did not commit a particularly serious crime and that he's not a danger. And I'm going back to the having been phrase. But if that doesn't have any meaning, wouldn't it have been the non-citizen who, after he was convicted, after a conviction of a particularly serious crime, constitutes? So in other words, there's no... that would more clearly separate, you got convicted of a particularly serious crime, we're going to look at that, and you constitute. And I think that's one of the arguments that counters you. You could have an and in here. And I guess I'm still pushing back on a little bit of just the phraseology. And it's just not clear to me. And I'm wondering if you have any thoughts. Yes, Your Honor. So while I suppose it's possible that we could have had an and, I suppose we would also say that there could have been a because. They are a danger because they have been convicted of a particularly serious crime. I don't think that this argument can overcome the surplusage canon or to the extent that you're having difficulties with ambiguities in the statute, the canon, the immigration rule of lenity, and the charming Betsy canon. I also wondered whether maybe that's a clue. And I don't know when this statute was enacted. Maybe you do. But having been convicted, I wonder if that's a clue that the categorical approach doesn't apply. Because of the way it's grammatically set up, which is you have this fact, but then you have at the end, you have this sort of judgment call about whether he's a danger to the community. It seems to me that that kind of takes it out of the categorical approach. Now, I'm attributing a lot of sophistication to Congress. And I'm not sure it's warranted here. But at least that's one reading of it, perhaps. I think that's possible. I do think that it is an unusual statute. And the reason it is unusual is because it is a mirror image of Article 33.2 of the Refugee Convention. They're exactly the same words. And, Your Honors, I see that I'm into my rebuttal time. And if there are no further questions, I would be happy to reserve the remainder of my time for rebuttal. All right. Let me do so. Thank you. Thank you very much. Mr. Giger, you may proceed. Thank you, Your Honors. May it please the Court, Christopher Giger on behalf of the Attorney General. Your Honors, Loper Bright did not call into question this Court's past decisions that relied on the Chevron framework. And in any event, the particularly serious crime provisions are examples where Congress expressly authorized the agency to exercise a degree of discretion. Before I begin, I want to note that I acknowledge my friend on the other side's argument about the statutory language and what's the best meaning. But in order to get there, this Court would first have to determine whether this Court's statutory precedent still applied, which it has, applying the board's framework that it's been doing since 2009 in Tyne v. Holder. And here our argument is that Loper Bright explicitly did not call into question this Court's statutory stare decisis. And the Supreme Court expressly stated that mere reliance on Chevron is not a special justification to overrule that statutory precedent. Didn't our case law, though, expressly defer to the board's interpretation? So we've got express language saying, well, this is the way the board has interpreted that, and we find that to be a reasonable interpretation, and then we move on. Do we have a case where we've independently, to your point, done it on our own? No, Your Honor, it hasn't. But as Loper Bright, at least our position, is that Loper Bright, the cases where this Court did defer under Chevron is still subject to statutory stare decisis, and that it's still statutory precedent that binds this Court. I don't know about bind. It was permissive. Loper Bright was permissive on that point. And the Court said, look, courts can do that, but this is the right analysis. So I don't think have to or must is actually the right way to phrase it. Sure. And let me actually narrow our position, because here our position focuses on Loper Bright's language that says mere reliance on Chevron is not enough to justify overturning that past precedent. And here, Mr. Duffy's sole basis before this Court asking to reinterpret these particularly serious crime provisions is that this Court previously relied on Chevron. And that's the sole basis. And so when we look at Loper Bright and the fact that Loper Bright expressly addressed that issue stating that it is not enough to overrule that precedent, Mr. Duffy's arguments are precluded and the Court should end its analysis there. Because this isn't to say that this Court is absolutely bound and now locked in step by its past Chevron decisions. But it's to say that what Loper Bright said, that it's bound by its precedent as it would be any other statutory precedent. And so here, because Mr. Duffy hasn't presented any other justification aside from pointing to Chevron, this Court should keep this frame or should reject that argument and maintain the framework that it has used since 2009. So it's not enough for him to say that, okay, it was proper to defer then, but now that you can look at it anew, that the deference was to an interpretation that really is not the better or best interpretation statute. That's not enough to bring the issue before us? That's correct, Your Honor. And that's exactly what Loper Bright, that's our position, that's exactly what Loper Bright said. That there has to be some other special justification and that pointing to Chevron as the only basis is not enough. And even if this Court disagrees, though, this is an example of statutory provisions where Congress has provided the agency express authority to, or excuse me, has authorized the agency to exercise a degree of discretion for deciding and determining whether an alien was convicted of a particularly serious crime. Let me ask you this, though. Suppose we, and I just want to hit this Loper Bright thing again, suppose we look at the statute and we say, you know what, non-categorical, there's these three elements that the BIA comes up with, nature of the conviction, length of the sentence, and the underlying facts of the conviction. I'm paraphrasing. Those are still in play, but we never really passed upon the particularly dangerous thing, so we sent it back down to the INA. How would that violate our past precedent if we did that? Because that's an example where this Court has addressed that issue before. Most recently in Shazi v. Garland, where this Court, the petitioner in that case, expressly brought up that or argued that the board and the immigration judge erred by not conducting a separate dangerousness inquiry. This Court rejected that argument and cited to Tyne v. Holder, which also cited a matter of Frantescu and a matter of Carball and the progeny of the board decisions, stating that that was not the proper focus in the particularly serious crime inquiry and that the statute did not require that separate inquiry. And so it would violate this Court's past precedent because it has, this Court has recognized that the separate inquiry is not required. And Judge Kelly, you wrote separately in Mumad v. Garland, also recognizing the Shazi holding that this Court has repeatedly held that a separate dangerous inquiry is not required. And so this Court has on a few occasions noted that the proper framework is focusing on whether the alien was convicted of a particularly serious crime. Even if it's the better reading, even if we were starting in noon and we said, you know, God, that's almost not even ambiguous. That's the best reading of the statute. You still think we're bound by it despite the fact that we, as Judge Kelly said, we used deference as the linchpin of why we did that. In this instance, yes, Your Honor, because again, Mr. Duffy's only justification for overruling it is reliance on Chevron. But still, and if this Court does disagree, there is still the degree of discretion that Congress has provided. And in those instances, the statutes that Congress enacted provide the Attorney General with broad language to determine or decide whether an alien was convicted of a particularly serious crime. And so, and this Court in Al-Musawwiri recognized that the agency is authorized some discretion in making its determination, and that's why the abusive discretion standard is utilized. Albeit it's not the absolute discretion that bars judicial review, but it's discretion nonetheless. And Loper Bright explained that when Congress has authorized the agencies to exercise some degree of discretion, the Court's job at that point is to confine the boundaries of that discretion and make sure that the agency reasonably exercised in doing so. I wanted to ask you just real quickly, because I kind of touched on it in my question, categorical approach. Other sites that's not, under the language and structure of this statute, it's not required. We've never, to my knowledge, we've never actually addressed it squarely, and there are a lot of immigration statutes that rely on the categorical approach. What's the government's view? We agree that the categorical approach would not be appropriate. Particularly, I think if we look at the broad language, that the Attorney General is deciding or determining whether or not an alien was convicted of a particular serious crime. So I think that lends to it, as opposed to if we look at if a state statute was a categorical match under the INA, that language is, if we can look at it, it's only if the alien was convicted of an aggravated felony. It's not the Attorney General deciding or determining. Now, like you said, those issues weren't brief, so I don't necessarily want to, I don't have a solidified position on it, because it wasn't brief, but I think that fairly addresses it. So I just want to ask one question with a hypothetical that gets at what the other side's arguing, which is, suppose somebody has been convicted of a particularly serious crime, but it was 25 years ago, and they're misspent youth, right? They committed a particularly serious crime. Since then, they've been a model citizen. A lot of time has passed. They volunteer in the community. Never committed another crime. Everyone says that they're the nicest person that they could possibly be. Is it the government's position? Too bad, so sad, even if you're not dangerous anymore? You once committed a particularly serious crime, so you're gone? Well, I think that the, what I would say to that, Your Honor, is that the rehabilitative nature of your hypothetical is considered in the particularly serious crime analysis. The board has explained that that's not a controlling factor and not a heavy factor, but it is considered nonetheless. And so that is something that the board would ultimately still look at when determining whether or not the alien was convicted of a particularly serious crime. And they have the discretion to still determine if in light of all reliable information, including rehabilitation, that they've been convicted of a particularly serious crime. Doesn't that look like, though, that they're giving effect to the second or the last part of the statute? I mean, if they're making a particularly dangerous determination, and I'm calling it something separate or a dangerous determination, it feels like the BIA is giving some effect to that last clause. Well, I think it has given limited effect to it in the sense that the board acknowledges that the statute has created a cause and effect. And so it doesn't necessarily, I disagree with the petitioner's point that it's a separate inquiry that needs a separate factual finding. But the board has given effect to that in the sense that it creates a cause and effect relationship. It's a past participial phrase. And as Judge Kelly, you mentioned, there's not two independent clauses with a conjunction. And also, Judge Kelly, you were asking about having been convicted, language is not the most clear. And so I do want to try to touch on that a little bit, if I could. But with the qualifier that in order for the court to get to the best reading of the statute, the court would still then have to disregard the Loper-Briggs language about stare decisis, disregard the discretion that Congress has authorized, and then turn to the best reading. But if the court does that, I think that the language having been convicted of a particularly serious crime, when we look at it, when we look at the withholding statute in particular, which was codified later, the asylum statute utilizes the language from the convention that was implemented in 1980, the original language. If we look at the withholding statute, which was codified more recently, the language is slightly different in that it removes the comma after a particularly serious crime and just says, is. And so the statute reads, the alien having been convicted by final judgment of a particularly serious crime is a danger to the community of the United States. And so I think this is indicative that Congress understood that if an alien was convicted of a particular serious crime, he or she was then a danger to the community. And we also cited legislative history because as Mr. Murphy noted, the initial statutory provisions implemented the language from the convention. And the convention was, it was implemented because the convention was non-executing. And Congress in the legislative history understood that, by the language of their statute, to mean that if an alien was convicted, or if an alien who has been convicted of a particularly serious crime, which makes them a danger to the community. And so both the legislative history, I think the language from the withholding, the current withholding statute, and also the fact that it's a participial phrase in the asylum statute without independent clauses with a conjunction, all indicate that a separate and so for these reasons, Your Honor, we ask that the court should hold that statutory stare decisis still applies and that because Mr. Duffy is only pointing to Chevron as a basis for overruling that precedent, Loper Bright precludes that. And also to briefly touch here, Your Honor, the board did not abuse its discretion in determining that Mr. Duffy was convicted of a particularly serious crime. The board adequately explained why Mr. Duffy's crime moved from a crime against property to a crime against persons. He burglarized an occupied dwelling at 3 o'clock in the morning and was actually confronted by the resident, which the board explained heightened the risk of violence and also decreased the tenant's right to privacy and sense of security. But the board also overlooked some of the other factors, right? If we're looking at all of the circumstances of the offense, didn't the guy just run away immediately? Didn't even really get in the house, just broke a screen? So there are a whole other set of facts about what happened there that were not addressed? Well, I disagree that they under the obligation to list every single piece of evidence. And here the board explained what it found as controlling, essentially, in this case. Specifically, why this case was, why Mr. Duffy's conviction moved from property to a crime against persons and noting that it didn't squarely fit between a matter of Francesco, a matter of Garcia-Garrachu. And under the discretion standard, it's not necessarily, at that point, it's just did the board adequately explain this decision? And here it did. And I disagree, respectfully, Your Honor, that the board didn't consider certain evidence. And as we explained in our brief, it did cite to the conviction records, which adequately laid out Mr. Duffy's conviction and the circumstances, particularly on page 1610. It includes the officer's affidavit that explained the conviction. And the board sufficiently explained why this crime was particularly serious. I see my time is about to expire unless the panel has any other questions. We ask the court to deny this petition for review, Your Honors. Thank you. Thank you, counsel. You have two minutes and 53 seconds. You may proceed. Thank you, Your Honor. May it please the court. I just want to start quickly with something that my friend on the other side noted, which is that the government does consider, the board does consider to some extent rehabilitation. This conflicts with what the government said on page 51 of its brief, which is that the board does not consider rehabilitation. And if this court is a little bit unsure about the extent to which the board currently considers danger or rehabilitation, it's not alone. In the circuit appeal of NAM itself, Judge Henry wrote a concurrence about how inconsistent the board is in applying the dangerousness component. And so I think it just speaks to how difficult it will be for the court to deny the petition unless it determines that the best reading of the statute is exactly what NAM's current framework is. Because it will have to determine exactly what NAM's current framework is. And I think that's going to be difficult. I have a question that may have a very simple answer. Under your reading of the particularly serious crime, the non-per se, you do a separate danger to the community analysis. Then under subsection big B, they identify that somebody who has been convicted of an aggravated felony, that's a particularly serious crime. Am I right so far? Yes, Your Honor. So then does that mean once you just slot in an aggravated felony, does that mean you also do a separate dangerousness analysis? Because what you're doing is just saying, well, the particularly serious crime here is an aggravated felony, so we also have to do a separate dangerousness analysis? Yes, Your Honor. Because aggravated felonies are per se PSCs, there would be a separate dangerousness analysis. And would that proceeding work similarly? It just seems like you've got more to work with when you've got a non-per se, particularly serious crime, whether they're a danger. I don't know. I'm trying to kind of work through that. If somebody's been convicted of an aggravated felony, I suppose it's just the features that you've been talking about, which is how are they doing now? What are they rehabilitated? That's right, Your Honor. And this is already something that commonly happens in immigration courts, which is the judge will assess whether something is an aggravated felony. If not, they move on to a particularly serious crime So I just want to get a reaction to the Loper-Bride argument. We've got to go statutory stare decisis because we've got precedent on it. Certainly, Your Honor. I see that I'm certainly going to run out of my rebuttal time if I answer that question. Thank you, Your Honor. So the government puts a lot of weight here on the term special justification, and I have two responses to that. One is that this court has never required a special justification to overturn a statutory precedent. Instead, this court uses the prior panel rule, which states that if an intervening Supreme Court decision has undermined the reasoning behind a decision, that we must follow Supreme Court precedent instead. It couldn't be more clear that Loper-Bride undermines the reasoning behind Tian and that line of cases. And the second is that the government doesn't accord any weight at all to how Loper-Bride actually defines stare decisis, which is that the holdings that specific agency actions are lawful are still good law. And so we're not looking to dig up any specific agency action, whether it's Mr. Tian's removal or Mr. Mumad's. And I suppose, if I may, I'd also like to call attention to the consequences of that, which would be for a reasonable interpretation, you'd have to go on bonk every single time when normally that is accorded for a best interpretation, Your Honor. We ask that the court grant the petition. Thank you. Thank you, counsel. We appreciate your arguments. They're very helpful. The case is submitted and the court will issue an opinion as soon as possible.